**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| RONALD KRICK, Individually and on Behalf of the Estate of Oliver Krick; MARGARETA KRICK; CHRISTOPHER KRICK; DOUGLAS KEVORKIAN, Individually and on Behalf of the Estate of Ralph Kevorkian; LISA MICHELSON, Individually and on Behalf of the Estate of Yonatan Rojany; ERIC ROJANY; JODELLE GEARON, Individually and on Behalf of the Estate of Daniel Gaetke; TODD GAETKE; CRAIG GAETKE; WANDA KEMP, Individually and on Behalf of the Estates of O. Lamar Allen and Ashton Allen; CHRISTINE GROGAN; EILEEN ZAHARIOUDAKIS, Individually and on Behalf of the Estate of Donald Gough; and MICHAEL DETERESA, | Judge: Hon. Angel Kelley<br><br>Case No.: 1:22-cv-11032-AK<br><br>[leave to file granted 12/12/2022] |
| Plaintiffs, | |
| vs. | |
| RAYTHEON COMPANY; LOCKHEED MARTIN CORPORATION; UNITED STATES; and DOES 1 through 20, inclusive, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF RAYTHEON COMPANY'S MOTION TO DISMISS THE PLAINTIFFS' SECOND AMENDED BECAUSE IT IS UNTIMELY AND RAISES NONJUSTICIBLE POLITICAL QUESTIONS**

Michael K. Lane (BBO #673501)
Jonathan I. Handler (BBO #561475)
DAY PITNEY LLP
One Federal Street, 29th Floor
Boston, MA 02110
T: (617) 345-4600
F: (617) 345-4745
mlane@daypitney.com
jihandler@daypitney.com

*Attorneys for Raytheon Company*

# TABLE OF CONTENTS

TABLE OF CONTENTS …………………………………………………...………..…….. i

TABLE OF AUTHORITIES …………………………………………..……..……........ iii

PRELIMINARY STATEMENT ………………………………………………...……....... 1

RELEVANT FACTS ……………………………………………………………..…..… 3

PROCEDURAL HISTORY ……………………………………………………………..….. 6

PLAINTIFFS' COMPLAINT ………………………………………………………...…..… 7

ARGUMENT …………………………………………………………………..……… 8

    I.      DISMISSAL UNDER F.R.C.P. 12(b)(6) IS APPROPRIATE BECAUSE THE ACTION EXCEEDS THE STATUTE OF LIMITATIONS AND FAILS TO ALLEGE FACTS TO SUPPORT TOLLING. …………………………........ 8

          A.  The Three-Year Statute of Limitations Is Enforceable. …………...…..……… 10

          B.  The Discovery Rule Does Not Save Plaintiffs' Expired Claims. …………..... 11

          C.  Fraudulent Concealment Does Not Toll the Statute of Limitations Because Plaintiffs Failed to Plead with Particularity any Fraudulent Misrepresentations by Raytheon and They Did Not Diligently Pursue the Information Regarding Their "New Cause" of the Accident. ……………..… 15

                1.  Plaintiffs Did Not Plead with Particularity Any Act of Concealment by Raytheon. ……………………………………………..……… 16

                2.  Plaintiffs' Failure to Act with Reasonable Due Diligence to Obtain the Alleged New Information Precludes Application of the Fraudulent Concealment Doctrine. …………………………………………..… 18

    II.     PLAINTIFFS' COMPLAINT PRESENTS NONJUSTICIABLE POLITICAL QUESTIONS REQUIRING ITS DISMISSAL. …………………..…….…… 19

          A.  The Complaint Demands Adjudication of Matters Constitutionally Committed to the Legislative and Executive Branches of Government. …... 20

          B.  There is No Judicially Discoverable, Manageable Standard for Resolving the Issues Implicated by This Lawsuit. ………………...…….. 26

          C.  Policy Determinations Outside of the Court's Discretion are Implicated. ……………………………………………………………… 26

i

CONCLUSION ………………………………………………………………...……. 27

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Abdallah v. Bain Capital LLC*
    752 F.3d 114 (1st Cir. 2014) …………………………………………..…… 9

*Airframe Sys. v. Raytheon Co.*
    520 F. Supp. 2d 258 (D. Mass. 2007) …………………………………………… 9

*Aktepe v. United States*
    105 F.3d 1400 (11th Cir. 1997) ……………………………………………… 21, 22, 26, 27

*Álvarez-Maurás v. Banco Popular of P.R.*
    919 F.3d 617 (1st Cir. 2019) ……………………………………………..…… 14, 15

*Am. Cyanamid Co. v. Capuano*
    381 F.3d 6 (1st Cir. 2004) ………………………………………………...……… 11

*Amedi v. BAE Sys.*
    782 F. Supp. 2d 1357 (N.D. Ga. 2011) …………………………………….…- 24, 25

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009) …………………………………………………….…….. 9

*Baker v. Carr*
    369 U.S. 186 (1962) …………………………………………………….. 19, 21, 26

*Bancoult v. McNamara*
    445 F.3d 427 (D.C. Cir. 2006) ……………………………………………..…… 23

*Bentzlin v. Hughes Aircraft Co.*
    833 F. Supp. 1486 (C.D. Cal. 1993) …………………………………………… 24, 27

*Boateng v. InterAmerican Univ., Inc.*
    210 F.3d 56 (1st Cir. 2000) …………………………………………...………… 9

*Bradley v. United States*
    951 F.2d 268 (10th Cir. 1991) ...…………………………………………….. 14

*Butler v. Am. Trawler Co.*
    887 F.2d 20 (1st Cir. 1989) ……………………………………………….. 10

*Cadiuex v. Int'l Tel. & Tel. Co.*
    593 F.2d 142 (1st Cir. 1979) …………………………………………..….. 12

*Callahan v. United States*
    426 F.3d 444 (1st Cir. 2005) ……………………………………………...…. 16

*Callahan v. United States*
    337 F. Supp. 2d 348 (D. Mass. 2004) …………………………………..….. 16, 17

*Carmichael v. Kellogg, Brown & Root Servs.*
    572 F.3d 1271 (11th Cir. 2009) ……………………………………….…. 21, 22, 26

*Chico-Velez v. Roche Prods.*
    139 F.3d 56 (1st Cir. 1998) ……………………………………………….. 11

*Concerned About Trident v. Schlesinger*
    400 F. Supp. 454 (D.D.C. 1975) ……………………………………….…… 23

*Ctr. for Biological Diversity v. Mattis*
    868 F.3d 803 (9th Cir. 2017) ……………………………………………...… 19

*Cutting v. United States*
    204 F. Supp. 2d 216 (D. Mass. 2002) …………………………...……. 11, 12, 14

*Demars v. Gen. Dynamics Corp.*
    779 F.2d 96 (1st Cir. 1985) ……………………………………………….. 15-16, 18

*Diekan v. Stone*
    No. 92-2462, 1993 U.S. App. LEXIS 13527 (1st Cir. June 10, 1993) …………...…… 20

*El-Shifa Pharm. Indus. Co. v. United States*
    607 F.3d 836 (D.C. Cir. 2010) ……………………………………….…… 27

*Epstein v. C.R. Bard, Inc.*
    460 F.3d 183 (1st Cir. 2006) …………………………………………...… 16

*Eveland v. Dir. of Cent. Intel. Agency*
    843 F.2d 46 (1st Cir. 1988) …………………………………………….… 20

*Exec. Jet Aviation v. City of Cleveland*
    409 U.S. 249 (1972) ………………………………………………...…. 10

*Gargano v. Liberty Int'l Underwriters, Inc.*
    572 F.3d 45 (1st Cir. 2009) ……………………………………………… 9

*Geo. Knight & Co. v. Watson Wyatt & Co.*
    170 F.3d 210 (1st Cir. 1999) …………………………………………… 12

iv

*Gilligan v. Morgan*
        413 U.S. 1 (1973) …………………………………………………… 21, 22, 26

*Gonzalez v. United States*
        284 F.3d 281 (1st Cir. 2002) ……………………………..…….. 13, 15, 16, 17, 18

*Gonzalez-Bernal v. United States*
        907 F.3d 246 (1st Cir. 1990) …………………………………………….. 16, 17

*Grell v. Trump*
        330 F. Supp. 3d 311 (D.D.C. 2018) …………………………………………… 21

*Grubart v. Great Lakes Dredge & Dock Co.*
        513 U.S. 527 (1995) ……………………………………………………..….. 10

*Haig v. Agee*
        453 U.S. 280 (1981) ……………………………………………………..….. 27

*Harris v. Kellogg Brown & Root Servs.*
        724 F.3d 458 (3d Cir. 2013) …………………………………………………… 19

*Holmberg v. Armbrecht*
        327 U.S. 392 (1946) ……………………………………………………..… 15

*HP, Inc. v. TÜV Rheinland of N. Am., Inc.*
        No. 21-CV-11575-AK, 2022 U.S. Dist. LEXIS 174580 (D. Mass. Sept. 27, 2022) ….. 8-9

*In re Korean Air Lines Disaster*
        597 F. Supp. 613 (D.D.C. 1984) ………………………………………………… 23

*Ionics, Inc. v. Massaro*
        No. 11-11526-DPW, 2016 U.S. Dist. LEXIS 5429 (D. Mass. Jan. 15, 2016) …………. 16

*Irwin v. Dep't of Veterans Affs.*
        498 U.S. 89 (1990) …………………………………………………...…… 11

*J. Geils Band Emp. Ben. Plan v. Smith Barney Shearson, Inc.*
        76 F.3d 1245 (1st Cir. 1996) …………………………………………..….. 16

*Japan Whaling Ass'n v. Am. Cetacean Soc'y*
        478 U.S. 221 (1986) ……………………………………………..….. 19

*LaChapelle v. Berkshire Life Ins. Co.*
        142 F.3d 507 (1st Cir. 1998) …………………………………………………..….. 9

*Lane v. Halliburton*
    529 F.3d 548 (5th Cir. 2008) ………………………………………………….. 19

*Lares Group, II v. Tobin*
    221 F.3d 41 (1st Cir. 2000) ……………………………………………….. 14

*LoConte v. Forest Labs., Inc.*
    No. 14-13848-NMG, 2015 U.S. Dist. LEXIS 77698 (D. Mass. June 15, 2015) ……… 9-10

*Loquasto v. Fluor Corp.*
    512 F. Supp. 3d 728 (N.D. Tex. 2021) …………………………………….. 19-20

*Marcoux v. Shell Oil Prods. Co.*
    524 F.3d 33 (1st Cir. 2008) ………………………………………….…… 11

*McMahon v. Presidential Airways, Inc.*
    502 F.3d 1331 (11th Cir. 2007) …………………………………………… 26

*Nejad v. United States*
    724 F. Supp. 753 (C.D. Cal. 1989) ………………………………………..… 27

*Oyegbola v. Advantage Assets Inc.*
    No. 09cv10418-NG, 2009 U.S. Dist. LEXIS 112723 (D. Mass. Dec. 7, 2009) ……….. 17

*Penagaricano v. Llenza*
    747 F.2d 55 (1st Cir. 1984) …………………………………………….… 20

*Pope & Talbot, Inc. v. Hawn*
    346 U.S. 406 (1953) …………………………………………………….. 10-11

*Rosario v. Fin. Oversight & Mgmt. Bd. for P.R.*
    No. 20-1307, 2020 U.S. Dist. LEXIS 244072 (D.P.R. Dec. 23, 2020) ……………..… 20

*Rotella v. Wood*
    528 U.S. 549 (2000) ……………………………………………………….. 14, 15

*Rx.com v. Medco Health Sols., Inc.*
    322 Fed. Appx. 394 (5th Cir. 2009) ……………………………………...…. 16

*Salois v. Dime Sav. Bank, FSB*
    128 F.3d 20 (1st Cir. 1997) …………………………………………….…. 15

*Sanchez v. United States*
    740 F.3d 47 (1st Cir. 2014) …………………………………...…… 12, 13, 14, 15

*Schneider v. Kissinger*
   412 F.3d 190 (D.C. Cir. 2005) ……………………………………………………… 21

*Schock v. United States*
   21 F. Supp. 2d 115 (D.R.I. 1998) …………………………………………….. 11, 13

*Schwartz v. Indep. Appraisals, LLC*
   No. 11-11051-RGS, 2011 U.S. Dist. LEXIS 132891 (D. Mass. Nov. 17, 2011) …..…. 16

*Shaw v. Digit. Equip. Corp.*
   82 F.3d 1194 (1st Cir. 1996) …………………………………………….…… 9

*Sisson v. Ruby*
   497 U.S. 358 (1990) ……………………………………………….…… 10

*Skwira v. United States*
   334 F.3d 64 (1st Cir. 2003) …………………………………………………….. 12

*Stalcup v. CIA*
   768 F.3d 65 (1st Cir. 2014) …………………………………………..……………….. 4

*Stalcup v. DOD*
   No. 13-11967-LTS, 2022 U.S. Dist. LEXIS 96190 (D. Mass. Mar. 23, 2022) ……..…. 7

*Stalcup v. DOD Agency*
   No. 13-cv-11967-LTS, 2021 U.S. Dist. LEXIS 191046 (D. Mass. Sept. 14, 2021) …….. 7

*Tagliente v. Himmer*
   949 F.2d 1 (1st Cir. 1991) …………………………………………………..….. 12

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*
   551 U.S. 308 (2007) ……………………………………………..………………… 9

*Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*
   524 F.3d 315 (1st Cir. 2008) ……………………………………………..…… 9

*Truck Drivers & Helpers Union, Local No. 170 v. NLRB*
   993 F.2d 990 (1st Cir. 1993) ……………………………………………… 18

*United States v. Kubrick*
   444 U.S. 111 (1979) …………………………………………………….. 11, 13, 14, 15

*Vieth v. Jubelirer*
   541 U.S. 267 (2004) ………………………………………………………… 19

*Watterson v. Page*
    987 F.2d 1 (1st Cir. 1993) ………………………………………..…………… 9

*Whitaker v. Kellogg Brown & Root, Inc.*
    444 F. Supp. 2d 1277 (M.D. Ga. 2006) ……………………………………… 20, 21

*Zimmerman v. Cambridge Credit Counseling Corp.*
    322 F. Supp. 2d 95 (D. Mass. 2004) ……………………………………...… 17

*Zuckerbraun v. Gen. Dynamics Corp.*
    755 F. Supp. 1134 (D. Conn. 1990) ……………………………………...….. 27

**Statutes**

46 U.S.C. § 30106 …………………………………………………………...….. 11

49 C.F.R. § 831.11(a) (2017) ……………………………………………………… 4

Mass. Gen. Laws ch. 229, § 2 (2022) …………………………………………… 11

**Other Authorities**

Fed. R. Evid. 201(b) …………………………………………………...…… 9

U.S. Const. art. I, § 8 …………………………………………………..…… 20

U.S. Const. art. II, § 2 ……………………………………………………… 20-21

**PRELIMINARY STATEMENT**

This case arises from the July 17, 1996, crash of a Boeing 747 operated as Trans World Airways Flight 800 ("TWA Flight 800") off the cost of Long Island.  The tragic crash caused the untimely, instant death of all 230 occupants on board.  The National Transportation Safety Board ("NTSB") investigation into the accident was extensive and concluded that the center wing fuel tank exploded when the flammable fuel/air mixture in the tank was ignited.  The NTSB further concluded, and Boeing concurred, that the most likely ignition source was a short circuit outside the tank, which created excessive voltage that eventually entered the tank through electrical wiring associated with the fuel quality indication system.  The aircraft design was a contributing factor to the accident, and various airframe safety recommendations were subsequently issued.  Plaintiffs and/or their representatives sued Boeing, TWA, and Hydro-Aire, Inc. within the three-year statute of limitations.  Those cases were consolidated in an MDL proceeding in the Southern District of New York, which resulted in full and final settlements and dismissals with prejudice.

Now, Plaintiffs bring this lawsuit against Raytheon Company ("Raytheon"), Lockheed Martin Corporation, and the United States 26 years after the accident on behalf of seven persons on board the fateful flight.  Plaintiffs allege that on April 15, 2021, they received a presentation from a physicist advising that an errant U.S. missile hit the aircraft during testing.  Plaintiffs claim this was the "real" cause of the accident.  Plaintiffs contend this incredulous revelation tolls the three-year statute of limitations until 2021 and permits the untimely filing of this case.  To overcome their substantial timeliness problem, Plaintiffs allege that they were prevented from discovering this "real" cause based on a vaguely alleged and unfounded conspiracy theory of a "cover-up," presumably (though not specifically alleged) concocted by all three Defendants.  Not only are Plaintiffs' substantive allegations against Raytheon baseless, but so too are the grounds

proffered to overcome the clear violation of the statute of limitations.

### *Statute of Limitations*

While a tragedy underlies this action, it does not influence black letter law on strict enforcement of statutes of limitations. Statutes of limitations serve the critical purpose of protecting defendants from stale claims.  For this reason, tolling is exceedingly rare.  Plaintiffs candidly admit that the Complaint is untimely but seek relief from the statute through (a) the discovery rule, and (b) the doctrine of fraudulent concealment.  Neither serves their purpose.

The discovery rule does not apply because the injury [death] was immediately known and its cause was knowable shortly after the terrible accident, and it was incumbent upon Plaintiffs to make diligent inquiry within the statutory period to identify the cause.  Plaintiffs were well-represented by sophisticated aviation counsel during the statutory period—an indication that they knew immediate inquiry was necessary. Moreover, the Complaint establishes that the "new information" was not new at all and was always available via the Freedom of Information Act or other ordinary investigative means, but the Plaintiffs did not pursue it within the statutory filing period.  Plaintiffs' lack of diligent inquiry prohibits application of the discovery rule to their claim.

Plaintiffs likewise cannot escape application of the three-year statute based on a theory of fraudulent concealment.  Although Plaintiffs attempt to assert this theory, it is not pled with the particularity required by Federal Rule of Civil Procedure 9(b).  Indeed, glaringly absent from the Complaint is the allegation of any fraudulent statements by Raytheon, or actions that any Raytheon employee took to further the alleged "cover-up" of the "truth" behind the crash of TWA Flight 800.  Plaintiffs' summary and conclusory offering on this theory is insufficient.  As a result, the statute of limitations cannot be tolled, and Plaintiffs' untimely Complaint should be dismissed.

### *Political Question Doctrine*

Additionally, dismissal of the Compliant is necessary because the allegations, and the defendants' defenses, are inextricably intertwined with matters textually committed to the Legislative and Executive branches of the U.S. government and litigating them would infringe upon sensitive foreign policy and national safety determinations. The allegations in the Complaint squarely take aim at the U.S. Government's assessment of the need for the Aegis missile system in view of national safety issues, its decisions regarding the development, design specifications, operability and (alleged) actual testing of the Aegis missile system—including when to test, where to test, and how. These matters are not to be adjudicated by the judiciary and should be dismissed under the political question doctrine.

For these reasons, and those set forth more fully below, Raytheon respectfully requests dismissal of the Complaint with prejudice.

## RELEVANT FACTS

On July 17, 1996, a Boeing 747 operated as TWA Flight 800 departed John F. Kennedy International Airport en route to Paris, France at approximately 8:20 p.m. (*See* Plaintiffs' Second Amended Complaint for Damages at ¶ 2, *Krick v. Raytheon Co*., No. 1:22-cv-11032-AK (D. Mass. Nov. 17, 2022), ECF No. 33 ("Compl.")). Twelve minutes after take-off the aircraft crashed into the Atlantic Ocean killing all 230 persons on board. (*See id.*) The NTSB launched an investigation into the accident. The investigation was extensive and lasted nearly four years, culminating in a 400-page report issued on August 23, 2000, which concluded that the probable cause of the TWA Flight 800 accident was an explosion of the center wing fuel tank resulting from ignition of the flammable fuel/air mixture in the tank. (*See* Nat'l Transp. Safety Bd. Aircraft Accident Report, TWA Flight 800, adopted August 23, 2000, at 308 ("NTSB Report"), attached as Exhibit A ("Ex.")

to the Declaration of Michael K. Lane in Support of Defendant Raytheon Company's Motion to Dismiss ("Lane Dec.")).  The most likely cause of the ignition was a short circuit outside the tank, which resulted in excessive voltage that traveled into the tank through electrical wiring associated with the fuel quality indication system. (*Id.*)  Certain design aspects of the center wing fuel tank and surrounding areas were deemed to be contributing factors, and various airframe safety recommendations were issued. (*Id.*)

At the outset of the investigation, the NTSB "quickly arrived at three possible explanations for the crash:  a bomb, a missile, or a mechanical failure." *Stalcup v. CIA*, 768 F.3d 65, 68 (1st Cir. 2014)*.*  The FBI was involved in the investigation due to the immediate concern of a potential criminal cause (a bomb or missile) of the accident. *Id.*  The FBI interviewed approximately 244 eyewitnesses. *Id.*  Because many of them "described a streak of light rising up to the plane just before the explosion, . . . the FBI asked the CIA to analyze the accounts and explore the likelihood of a missile strike." *Id.*  The NTSB utilized FBI witness summaries to aid its analysis, and its report noted over 700 witnesses to the event, with many stating they saw a streak of light or believed they saw a missile. (*See* Lane Dec., Ex. A, at 229-33). The missile concern is not new information.

As part of the NTSB investigation process, party-participants to the investigation are designated by the NTSB to assist with the investigation. *See* 49 C.F.R. § 831.11(a) (2017). Raytheon was not designated as a party participant to the investigation. (*See* NTSB Public Docket, Designation of Parties, (July 1, 1997), attached as Ex. B to Lane Dec.).

The NTSB analyzed an extensive amount of data. (*See generally* Lane Dec. at Ex. A. ) Among other areas of inquiry, the NTSB evaluated the aircraft structure, fuel system, electrical wiring, air-conditioning equipment, maintenance information, flight crew, fuel logs, flight data recorder, cockpit voice recorder, wreckage, radar data, witness statements, and medical and

pathological information. *See id.*   The Report discussed radar data, witness statements, and evaluation of whether a missile or bomb caused the accident. (*See id.* at 65 n.127-28, 87-94, 118-19, 229-36, 242-55, 257-59, 262-70, 272-74).

Two days after the accident the front page of the New York Times read:  *Explosion Aboard T.W.A. Flight 800:  The Overview; Investigators Suspect Explosive Device as Likeliest Cause for Crash of Flight 800*. (*See* Matthew Purdy, *Explosion Aboard T.W.A. Flight 800:  The Overview; Investigators Suspect Explosive Device as Likeliest Cause for Crash of Flight 800*, N.Y. Times, July 19, 1996, at https://www.nytimes.com/1996/07/19/nyregion/explosion-aboard-twa-flight-800-overview-investigators-suspect-explosive-device.html, attached as Ex. C. to Lane Dec.).  The article reported that federal law enforcement officials stated on the day after the crash "that the most likely explanation" for the accident "was that a bomb or, perhaps, a missile" caused the crash. (*Id.*)  The article stated that the investigation would probe whether "the airplane was hit by a missile fired from a boat." (*Id.*)  News outlets across the world published similar articles.  After years of investigative work, the NTSB and FBI concluded definitively that neither a bomb nor a missile caused the crash. (Lane Dec., Ex. A at 308).  It was a well-considered theory of which everyone was aware, including the families of those on board the accident flight.

### TWA Flight 800 Multi District Litigation

TWA Flight 800 was the subject of an MDL venued in the Southern District of New York. *In re:  Air Crash TWA*, No. 1:96cv7986, MDL No. 1161 (Oct. 24, 1996) (*See  TWA Flight 800 MDL* Docket attached as Ex. D to Lane Dec.).  The Estates and beneficiaries of all decedents identified in the Complaint were represented by counsel in those proceedings and sued Boeing, TWA, and Hydro-Aire (fuel system manufacturer). (*See id.* at Docket Entries 261, 290, 315, 345, 367, 418, 420, 421, 470;  *see also* Ex. E attached to Lane Dec.; *see also Rojany v. T.W.A.*, No.

5

1:97cv6809 (Sept. 15, 1997) (docket report), attached as Ex. F to Lane Dec.; *Krick v. Boeing Co.*, No. 1:98cv7011 (Oct. 6, 1998) (docket report), attached as Ex. G to Lane Dec.). All claims, including those brought on behalf of Plaintiffs' decedents, were settled and dismissed with prejudice. (*See id.*)

## PROCEDURAL HISTORY

On June 28, 2022, thirteen Plaintiffs purporting familial relationships to seven decedents on board TWA Flight 800 commenced litigation in this Court against U.S. governmental agencies, Raytheon Technologies Corporation, Raytheon Corporation, and Lockheed Martin Corporation seeking compensatory and non-compensatory damages under theories of negligence and strict liability for the death of their relatives on board the flight. (*See* Complaint for Damages at ¶¶ 15-27, *Krick v. Raytheon Co.*, No. 1:22-cv-11032-GAO (D. Mass. June 28, 2022), ECF No. 1). On September 19, 2022, Plaintiffs filed a substantively identical Amended Complaint adding two Plaintiffs to the case. (*See* First Amended Complaint for Damages, *Krick v. Raytheon Co.*, No. 1:22-cv-11032-AK (D. Mass. Sept. 19, 2022), ECF No. 6). On November 16, 2022, Plaintiffs filed, and the Court granted, an uncontested Motion to Amend the Complaint. (*See* Plaintiffs' Unopposed Motion For Leave to File Second Amended Complaint, *Krick v. Raytheon Co.*, No. 1:22-cv-11032-AK (D. Mass. Nov. 16, 2022), ECF No. 30). On November 17, 2022, Plaintiffs filed the operative Second Amended Complaint ("Complaint"), correcting the caption by naming the United States in place of the government agencies, dropping Raytheon Technologies Corporation, and dropping the two Plaintiffs added to the First Amended Complaint. (*See* Compl. at 1). The Second Amended Complaint is substantively identical to its predecessors.

Plaintiffs plead diversity jurisdiction under 28 U.S.C. §1332 as the basis for federal court subject matter jurisdiction over the case. (*Id.* at ¶ 12)

## PLAINTIFFS' COMPLAINT

### *Statute of Limitations*

Plaintiffs admit the Complaint was filed after the statute of limitations. (*Id.* at ¶ 94). Plaintiffs allege that the discovery rule and doctrine of fraudulent concealment toll the statute until April 15, 2021, when they allegedly attended a meeting hosted by a third-party physicist, Dr. Stalcup,[1] who informed Plaintiffs of "the key facts he learned in his FOIA lawsuit indicating that the TWA 800 crash was caused by a missile." (*Id.* at ¶¶ 95-100). Plaintiffs allege that these facts are found in FBI records that were never publicly released, including: (1) "an 'original [Navy radar] tape' showing an object 'heading straight for TWA 800'" and another record describing an object impacting the TWA 800; (2) witness statements about seeing a flair go up and hit an object in the sky; (3) "internal government communications" indicating that a missile was involved; and (4) a private consultation with a former FBI official who informed him drone targets were flying in the area when TWA Flight 800 crashed. (*Id.* at ¶¶ 49, 84, 86). Plaintiffs note this information was obtained by Dr. Stalcup through the Freedom of Information Act process, including FOIA litigation. (*Id.* at ¶ 83). Therefore, it was equally available to Plaintiffs, who do not allege that they pursued this information through independent FOIA requests or investigative means.

Plaintiffs allege they relied on the NTSB probable cause finding. (*Id.* at ¶ 50). Plaintiffs allege the NTSB Report was "false" and "did not include and/or ignored crucial evidence that ran counter to its conclusion." (*Id.* at ¶¶ 3, 51). Plaintiffs contend that before April 15, 2021, they

---

[1] Dr. Thomas Stalcup is not a plaintiff in this case but is a physicist who has been independently investigating the TWA Flight 800 accident since at least 1999 and pursuing information from various U.S. Government agencies via the Freedom of Information Act since at least 2010 and 2011. *See Stalcup v. DOD*, No. 13-11967-LTS, 2022 U.S. Dist. LEXIS 96190, at *1 (D. Mass. Mar. 23, 2022); *Stalcup v. DOD Agency*, No. 13-cv-11967-LTS, 2021 U.S. Dist. LEXIS 191046, at *3-5 (D. Mass. Sept. 14, 2021).

"were not aware of, or on notice of, the information that forms the basis of this complaint, nor have the Plaintiffs had any reasonable opportunity [to] discover their injury, its cause, and the link between the two." (*Id.* at ¶ 98). Plaintiffs allege the Defendants, led by the U.S. government, took (unspecified) "active steps to mislead the families and the public, as well as conceal that the TWA 800 crash was caused by a missile, including confiscating and concealing evidence from the United States Navy." (*Id.*at ¶ 99). Plaintiffs' Complaint does not allege any specific acts of concealment by Raytheon.

Plaintiffs' Complaint focuses heavily on the decision making of the U.S. Government to take certain actions with respect to the Aegis missile program. (*Id.* at ¶ 5). Plaintiffs allege the missile program "became a high priority for the U.S. Government in 1996, when former Secretary of Defense William Perry sought a significant increase in funding for the Navy's Aegis Missile system from the U.S. Senate's Armed Services Committee." (*Id.* at ¶ 55). Plaintiffs claim the Department of Defense proposed the Aegis missile system proceed "as quickly as possible to production and deployment" to increase the United States' defense capability against missiles from hostile countries. (*Id.* at ¶ 56). Plaintiffs allege that Secretary Perry "characterized the missile threat from rogue nations as 'here and now.'" (*Id.* at ¶ 57). As discussed more fully below, these allegations support dismissal of this case based on the political question doctrine.

## ARGUMENT

## I.    DISMISSAL UNDER F.R.C.P. 12(b)(6) IS APPROPRIATE BECAUSE THE ACTION EXCEEDS THE STATUTE OF LIMITATIONS AND FAILS TO ALLEGE FACTS TO SUPPORT TOLLING.

"To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege sufficient facts to state a claim for relief that is actionable as a matter of law and 'plausible on its face.'" *HP, Inc. v. TÜV Rheinland of N. Am., Inc.*, No. 21-CV-11575-AK, 2022 U.S. Dist. LEXIS 174580, at

*3-4 (D. Mass. Sept. 27, 2022) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)).  "When the allegations in a complaint show that the passage of time between the events giving rise to the claim and the commencement of the action exceeds the applicable limitations period, a district court should grant a 12(b)(6) motion by the defense if the complaint (and any other properly considered documents) 'fails to sketch a factual predicate that would' provide a basis for tolling the statute of limitations." *Abdallah v. Bain Capital LLC*, 752 F.3d 114, 119 (1st Cir. 2014) (quoting *Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*, 524 F.3d 315, 320 (1st Cir. 2008)) (internal quotation marks omitted).  "Granting a motion to dismiss based on a limitations defense is entirely appropriate when the pleader's allegations leave no doubt that an asserted claim is time-barred." *LaChapelle v. Berkshire Life Ins. Co.,* 142 F.3d 507, 509 (1st Cir. 1998).

In deciding the motion, the court presumes that the facts are as alleged by Plaintiffs "and/or reflected in other properly considered records, with reasonable inferences drawn in plaintiffs' favor." *Abdallah*, 752 F.3d at 119.  The court may take judicial notice of a "fact that is not subject to reasonable dispute." Fed. R. Evid. 201(b); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).  This includes "official public records" and "documents sufficiently referred to in the complaint." *Gargano v. Liberty Int'l Underwriters, Inc.*, 572 F.3d 45, 47 n.1 (1st Cir. 2009) (quoting *Watterson v. Page,* 987 F.2d 1, 3-4 (1st Cir. 1993)).[2]  Documents from prior court adjudications are public records, of which this Court can take judicial notice. *See Boateng v. InterAmerican Univ., Inc.*, 210 F.3d 56, 60 (1st Cir. 2000).  The court also may take judicial notice of the fact that news articles were published. *See LoConte v. Forest Labs., Inc.*, No. 14-13848-

---

[2] "[W]here the plaintiff has referenced part of a document in the complaint, it is proper for the court to view the rest of that document so as to be able to understand it in context." *Airframe Sys. v. Raytheon Co.*, 520 F. Supp. 2d 258, 263 (D. Mass. 2007) (citing *Shaw v. Digit. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

NMG, 2015 U.S. Dist. LEXIS 77698, at *12-13 (D. Mass. June 15, 2015).

It is undisputed that Plaintiffs' Complaint is untimely and their summary allegations of a conspiratorial government cover-up as to the cause of the accident cannot save their claim. While Plaintiffs' Complaint tells a sensational tale, it lacks the facts essential to toll the statute. Plaintiffs allege only that they relied on the NTSB report, which they now believe is false due to information provided to them by Dr. Stalcup (a third party) during a presentation in 2021. Even if Plaintiffs' allegations of the debunked missile strike theory and coverup were true, there is no dispute that this is not "new" information. This information could have been obtained by Plaintiffs and their counsel years ago. The missile theory was in the news, discussed at press conferences, and included in the NTSB report. Moreover, Plaintiffs have not alleged—because they cannot do so in good faith—that Raytheon ever made statements that misled Plaintiffs or otherwise prevented them from obtaining this information before the statute of limitations expired, nor have Plaintiffs alleged a single overt act that Raytheon took to "cover up" the truth. With no plausible basis to toll the statute on the face of the Complaint, dismissal is appropriate.

### A.   The Three-Year Statute of Limitations Is Enforceable.

The Uniform Statute of Limitations for Maritime torts applies to all maritime torts.[3] *See Butler v. Am. Trawler Co.*, 887 F.2d 20, 21 (1st Cir. 1989) (relying on *Pope & Talbot, Inc. v.*

---

[3]A maritime claim is one that has maritime locality and bears a significant relationship to traditional maritime activity. *See Exec. Jet Aviation v. City of Cleveland,* 409 U.S. 249, 266-68 (1972). The locality requirement is satisfied when the tort occurs on navigable waters, i.e., where the alleged negligence takes effect, not where the negligent act occurred. *See Butler,* 887 F.2d at 21 (citing *Executive Jet* for the principle that "the tort occurs where the negligence 'takes effect,' not where the negligent act occurred"). The court assesses general features "'of the type of incident involved' to determine whether the incident has 'a potentially disruptive impact on maritime commerce,' . . . and whether the 'general character' of the 'activity giving rise to the incident' shows a 'substantial relationship to traditional maritime activity.'" *Grubart v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995) (quoting *Sisson v. Ruby*, 497 U.S. 358, 363, 364 n.2, 365 (1990)).

*Hawn*, 346 U.S. 406, 409 (1953)).  The statute provides that "a civil action for damages for personal injury or death arising out of a maritime tort must be brought within 3 years after the cause of action arose." 46 U.S.C. § 30106.[4]  To be timely, the Complaint needed to be filed by July 17, 1999.  It was not filed until almost 23 years later.  As such, the action is time barred.

Statutes of limitation "are found and approved in all systems of enlightened jurisprudence [and] represent a pervasive legislative judgment that . . . the right to be free of stale claims in time comes to prevail over the right to prosecute them." *Am. Cyanamid Co. v. Capuano*, 381 F.3d 6, 15 (1st Cir. 2004) (quoting *United States v. Kubrick*, 444 U.S. 111, 117 (1979) (internal quotations omitted)).  The general purpose of statutes of limitations is to ensure potential defendants are put on notice of claims against them and to "avoid the difficulties inherent in litigating matters long past." *Marcoux v. Shell Oil Prods. Co.*, 524 F.3d 33, 42 (1st Cir. 2008).  Statutes of limitations are strictly enforced and federal courts generally "extend[] equitable relief [to toll a statute] only sparingly." *Irwin v. Dep't of Veterans Affs.,* 498 U.S. 89, 96 (1990); *see also Chico-Velez v. Roche Prods.*, 139 F.3d 56, 59 (1st Cir. 1998) (noting that equitable tolling is "reserved for exceptional cases").  There is no doubt Plaintiffs' Complaint is untimely, and none of the allegations demonstrate that tolling is warranted.  Therefore, the Complaint should be dismissed.

### B.  The Discovery Rule Does Not Save Plaintiffs' Expired Claims.

The discovery rule protects plaintiffs who suffer "'blameless ignorance.'" *Schock v. United States*, 21 F. Supp. 2d 115, 119 (D.R.I. 1998) (quoting *Kubrick,* 444 U.S at 120 n.7).  It is most often utilized in the medical malpractice or latent injury context. *See Cutting v. United States*, 204 F. Supp. 2d 216, 222 (D. Mass. 2002).  It has been implemented in the wrongful death context, but

---

[4] Even if Plaintiffs contend the Massachusetts Statute of Limitations applies, it is also a three-year statute. *See* MASS. GEN. LAWS ch. 229, § 2 (2022).

not when the injury is readily apparent and the cause ascertainable through diligent inquiry. *See id.* It has no applicability in a case like this, where Plaintiffs immediately knew of the fatal injuries sustained by their loved ones and the factual basis for the cause of action could be determined through the exercise of reasonable diligence. *See id.* at 223-25. As discussed *supra* p. 7, Plaintiffs could have engaged in the FOIA process, or other investigation, decades earlier to ascertain the alleged cause of the accident. Thus, the discovery rule is unavailable to save the Complaint from dismissal.

Under the discovery rule, an action accrues when a party suffers injury and knew, or in the exercise of reasonable diligence should have known, the factual basis for the cause of action. *Geo. Knight & Co. v. Watson Wyatt & Co.,* 170 F.3d 210, 213 (1st Cir. 1999) (citing *Tagliente v. Himmer*, 949 F.2d 1, 4 (1st Cir. 1991)). The factual basis for the cause of action must have been "'inherently unknowable at the time of injury.'" *Id.* at 213 (quoting *Tagliente*, 949 F.2d at 4). The factual basis is "'inherently unknowable' if it is 'incapable of detection by the wronged party through the exercise of reasonable diligence.'" *Id.* (quoting *Tagliente*, 949 F.2d at 4). When considering whether a claim was inherently unknowable, a court will impute to the plaintiff an awareness of any knowledge that would have been uncovered through reasonable inquiry. *See Skwira v. United States*, 344 F.3d 64, 77-78 (1st Cir. 2003). The standard is objective; Plaintiffs' individual state of mind is irrelevant. *See Sanchez v. United States*, 740 F.3d 47, 52 (1st Cir. 2014).

The "duty of inquiry is particularly strict when the injury at issue is a death." *Cutting,* 204 F. Supp. 2d. at 225. "The First Circuit has noted that 'the community disturbing event of death is likely to prompt immediate focus by third parties upon the cause thereof, thereby eliminating one possible delay in assembling a personal injury case.'" *Id.* (quoting *Cadieux v. Int'l Tel. & Tel. Co.*, 593 F.2d 142, 145 (1st Cir. 1979)). "If plaintiff fails to act despite knowledge of the harm, then

plaintiff loses the claim." *Schock,* 21 F. Supp. 2d at 119 (citing *Kubrick*, 444 U.S. at 123-24).  The duty to inquire includes seeking advice from a lawyer about potential claims. *See Gonzalez v. United States*, 284 F.3d 281, 289 (1st Cir. 2002).

It is evident from the public docket in the TWA Flight 800 MDL proceedings, that these Plaintiffs, or their representatives, immediately probed the cause of the accident.  They retained legal counsel and sued Boeing, TWA, and Hydro-Aire, Inc.  Plaintiffs' decision to retain counsel shortly after the accident "is a telling sign that a reasonable person would have concluded that 'reasonable diligence' was called for in order to determine whether there was negligence." *Sanchez¸* 740 F.3d at 53 (quoting *Gonzalez*, 284 F.3d at 289-90) (noting that the decision to retain counsel after a mother's death in childbirth triggered the obligation to diligently investigate the cause of decedent's death).  Moreover, they were represented by some of the most well-respected aviation plaintiffs' lawyers in the world.  Under their guidance, Plaintiffs had the opportunity to participate in party and non-party discovery, to pursue inquiry through FOIA and private investigation, and to consult with technical experts on the issues implicated by the accident.  It is unlikely these experienced Plaintiffs' aviation lawyers did not pursue all theories and obtain all the information about the accident, but even if they failed to do so it would not permit application of the discovery rule. *See Kubrick*, 444 U.S. at 123-24 (noting that the statute of limitations begins to run regardless of whether plaintiffs make the required inquiry and regardless of whether they are correctly advised).  Simply put, these Plaintiffs did not suffer the "blameless ignorance" the discovery rule is intended to remedy.

Nor does Plaintiffs' passive receipt of the information in 2021 from Dr. Stalcup bring these new claims within the application of the discovery rule. As the Complaint suggests, the information and data always existed.  Plaintiffs apparently did not pursue it, someone else did.

The information was not beyond their reach; they did not even try to reach for it. This makes the discovery rule unavailable to them. Nonetheless, Plaintiffs ask this Court to ignore these obvious issues and distort the discovery rule to fit Plaintiffs' willful ignorance of the statute of limitations. Indeed, by Plaintiffs' application, a plaintiff, aware of her injury and on notice that an accident caused it, could take no action regarding her claim until someone tells her she has a claim against a supposed wrongdoer. This would render statutes of limitations endless and therefore meaningless. As the Tenth Circuit observed: "To allow plaintiff to postpone accrual until he is passively informed by an outside source that his injury was negligently inflicted would serve to undermine the purpose of the statute of limitations . . . ." *Bradley v. United States*, 951 F.2d 268, 271 (10th Cir. 1991).

Nor does Plaintiffs' contention that the "recent discovery" that a U.S. Missile caused the accident, and that Raytheon was purportedly involved, trigger application of the discovery rule. Assuming, *arguendo,* that Plaintiffs' espoused theory is even credible, the discovery rule does not toll the statute of limitations until the Plaintiff is able to prove her case or until she knows the specifics about who inflicted her injury. *See Cutting*, 204 F. Supp. 2d at 227; *Álvarez-Maurás v. Banco Popular of P.R.,* 919 F.3d 617, 628 (1st Cir. 2019). In *United States v. Kubrick*, the Supreme Court rejected the argument that a plaintiff must know of a tortfeasor's negligence before the cause of action accrues under the discovery rule. *See* 444 U.S. at 122-24. "[D]iscovery of the injury, not discovery of the other elements of a claim, is what starts the clock." *Rotella v. Wood,* 528 U.S. 549, 555 (2000); *Lares Group, II v. Tobin*, 221 F.3d 41, 44 (1st Cir. 2000) (observing that the First Circuit follows this rule).

It is irrefutable that Plaintiffs' decedents sustained fatal injuries instantly because of the accident and, thus, their claims accrued on July 17, 1996. *See Sanchez,* 740 F.3d at 52 (noting "[i]t

is beyond reasonable dispute" that the claim accrued when decedent died after giving birth, as the "injury was then, by its nature, complete and obvious").  A commercial airplane does not normally crash, leading "most reasonable people [to] ask why it happened." *Id.* (observing death of generally healthy women in childbirth is sufficiently rare so that reasonable people ask why it happened).  It does not matter that Plaintiffs did not know exactly who was responsible for the accident. *See Álvarez-Maurás*, 919 F.3d at 628; *Kubrick*, 444 U.S. at 122; *Rotella*, 528 U.S. at 555.  Plaintiffs were required to diligently inquire into the cause of the accident and pursue relevant data relating to the accident when it occurred, instead of waiting for 25 years for someone else to provide it to them. *See Sanchez*, 740 F.3d at 53 (noting plaintiff did not explain the efforts he made to get purportedly delayed reports sooner, or how their absence precluded him from timely filing his complaint).  Thus, the discovery rule does not toll the statute of limitations on Plaintiffs' claims. The statute began to run on July 17, 1996 and expired on July 17, 1999.  The Complaint is untimely and should be dismissed with prejudice.

### C.  Fraudulent Concealment Does Not Toll the Statute of Limitations Because Plaintiffs Failed to Plead with Particularity any Fraudulent Misrepresentations by Raytheon and They Did Not Diligently Pursue the Information Regarding Their "New Cause" of the Accident.

The doctrine of fraudulent concealment tolls the statute of limitations "where a plaintiff has been injured by fraud and remains in ignorance of it without any fault or want of diligence or care on his part." *Salois v. Dime Sav. Bank, FSB*, 128 F.3d 20, 25 (1st Cir. 1997) (quoting *Holmberg v. Armbrecht*, 327 U.S. 392, 397 (1946) (citations and internal quotations omitted)). Fraudulent concealment tolls the statute of limitations when some affirmative act of the defendant conceals material facts about his wrongful conduct in causing plaintiff's injury and plaintiff could not discover these facts within the normal limitations period despite acting with due diligence. *See Gonzalez*, 284 F.3d at 292 (citing *Demars v. Gen. Dynamics Corp.*, 779 F.2d 96, 97 (1st Cir.

1985)); *Callahan v. United States*, 426 F.3d 444, 454 (1st Cir. 2005).

Plaintiffs' summary allegations that Defendants engaged in a government-led conspiracy to conceal the Plaintiffs' proffered "real cause" of the accident fall far short of establishing fraudulent concealment by Raytheon sufficient to toll the statute. Accordingly, the Complaint should be dismissed.

### 1.    Plaintiffs Did Not Plead with Particularity Any Act of Concealment by Raytheon.

Fraudulent concealment must be pled with particularity under Fed. R. Civ. P. 9(b). *See Iconics, Inc. v. Massaro*, No. 11-11526-DPW, 2016 U.S. Dist. LEXIS 5429, at *21-23 (D. Mass. Jan. 15, 2016) (citing *J. Geils Band Emp. Ben. Plan v. Smith Barney Shearson, Inc.*, 76 F.3d 1245, 1255 (1st Cir. 1996)). The Complaint must include the time, place, and content of the false or fraudulent representations made by the defendant. *See id.* (citing *Epstein v. C.R. Bard, Inc.*, 460 F.3d 183, 189-90 (1st Cir. 2006)). Plaintiff must "plead with particularity the circumstances surrounding the concealment and state facts showing . . . due diligence in trying to uncover the facts." *Callahan v. United States*, 337 F. Supp. 2d 348, 367 (D. Mass. 2004) (quoting *Gonzalez-Bernal v. United States*, 907 F.3d 246, 250 (1st Cir. 1990) (internal citations omitted)). Failure to plead with particularity renders the doctrine inapplicable.

In connection with these pleading requirements, Plaintiffs must plead that Raytheon "engaged in fraud or deliberate concealment of material facts related to the [alleged] wrongdoing." *Gonzales*, 284 F.3d at 292. Plaintiffs must specifically allege that Raytheon is "guilty of some trick or contrivance tending to exclude suspicion and prevent inquiry." *Schwartz v. Indep. Appraisals, LLC,* No. 11-11051-RGS, 2011 U.S. Dist. LEXIS 132891, at *19 (D. Mass. Nov. 17, 2011) (quoting *Rx.com v. Medco Health Sols., Inc.*, 322 Fed. Appx. 394, 398 (5th Cir. 2009)) (citations omitted). Plaintiffs must assert some "affirmative acts or representations [by Raytheon]

which are calculated to, *and in fact do, prevent the discovery of the cause of action.*" *Callahan*, 337 F. Supp. 2d at 367 (quoting *Gonzalez-Bernal,* 907 F.2d at 250) (emphasis added).  Plaintiffs have not done so here.

Plaintiffs fail to allege that Raytheon did or said anything to conceal facts relating to the cause of the accident or the information giving rise to their Complaint.  The Complaint does not so much as allege that Raytheon said or did anything to "cover-up" the missile theory, that it had any involvement in the investigation, or made any statements to anyone, including the NTSB, FBI, or Plaintiffs themselves, about the accident.  Plaintiffs do not even allege how Raytheon could be part of such a "cover-up"; specifically, Plaintiffs do not plead any facts indicating Raytheon even knew about the investigation or that any of its products could potentially be involved in the accident.  Plaintiffs do not plead any facts offering any insight into this so-called "top-down cover-up"; there is no who, what, when, or where alleged on this theory at all.  Instead, Plaintiffs offer summary allegations as to "Defendants" and point to activity by the FBI, CIA, and NTSB relating to the investigation. (*See* Compl. at ¶¶ 38-54).  These conclusory allegations of a generalized government-led conspiracy fall far short of the showing required to toll a statute of limitations for fraudulent concealment as to claims against Raytheon. *See Oyegbola v. Advantage Assets Inc.*, No. 09cv10418-NG, 2009 U.S. Dist. LEXIS 112723, at *8 (D. Mass. Dec. 7, 2009) (citing *Gonzalez*, 284 F.3d at 292; *Zimmerman v. Cambridge Credit Counseling Corp*., 322 F. Supp. 2d 95, 98 (D. Mass. 2004), *vacated and remanded on other grounds*, 409 F.3d 473 (1st Cir. 2005)) (concluding plaintiff could not establish fraudulent concealment by offering conclusory allegations of concealment without "identifying any factual basis for his claims").

Plaintiffs' failure to plead specific misrepresentations by Raytheon renders the fraudulent concealment doctrine unavailable to toll the statute of limitations on Plaintiffs' claims.

2.      **Plaintiffs' Failure to Act with Reasonable Due Diligence to Obtain the Alleged New Information Precludes Application of the Fraudulent Concealment Doctrine.**

An allegation of fraudulent concealment does not save a party who fails to exercise due diligence. *See Truck Drivers & Helpers Union, Local No. 170 v. NLRB*, 993 F.2d 990, 998 (1st Cir. 1993). To successfully invoke the doctrine, in addition to pleading fraudulent misrepresentation, Plaintiffs also must plead and establish that they "failed to discover [the concealed material] facts within the normal limitations period despite his or her exercise of due diligence." *Gonzalez*, 284 F.3d at 292. Implicit in the concept of due diligence is the requirement that a plaintiff must pursue all reasonable avenues of inquiry. *See, e.g.*, *Demars*, 779 F.2d at 99. Plaintiffs' Complaint lacks any indication that they engaged in any effort over the last 26 years to obtain the alleged "concealed" material facts purportedly revealing Raytheon's involvement in the accident. Plaintiffs' failure to plead that they acted with due diligence to procure the information on which they now rely precludes application of the fraudulent concealment doctrine.

In fact, the Complaint demonstrates that through FOIA or general investigative inquiry, the radar data, witness statements, and alleged information about a missile were always available, but Plaintiffs did not engage in any effort to obtain them. As discussed *supra* at 7, 10, Plaintiffs' choice not to explore all potential causes of the accident known to them, including the missile theory, and their failure to pursue the documents and information discussed in their Complaint is fatal to the application of the fraudulent concealment doctrine. Furthermore, that Plaintiffs were represented by counsel in the MDL proceedings undeniably establishes that they had the means and method by which to seek out this information and chose not to do so, instead choosing to obtain a monetary settlement. The fraudulent concealment doctrine does not act to toll the statute of limitations on these facts.

## II.     PLAINTIFFS' COMPLAINT PRESENTS NONJUSTICABLE POLITICAL QUESTIONS REQUIRING ITS DISMISSAL.

"The political question doctrine excludes from judicial review those controversies which revolve around policy choices and value determinations constitutionally committed for resolution to the halls of Congress or in the confines of the Executive Branch." *Japan Whaling Ass'n v. Am. Cetacean Soc'y*, 478 U.S. 221, 230 (1986).  A political question exists if any one of the factors set forth by the Supreme Court in *Baker v. Carr* is "inextricable from the case at bar." 369 U.S. 186, 217 (1962).  These factors include:

(1) A textually demonstrable constitutional commitment of the issue to a coordinate political department; or
(2) A lack of judicially discoverable and manageable standards for resolving it; or
(3) The impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or
(4) The impossibility of a court's undertaking independent resolution without expressing lack of respect due coordinate branches of government; or
(5) An unusual need for unquestioning adherence to a political decision already made; or
(6) The potentiality of embarrassment from multifarious pronouncements by various departments on one question.

*Id.*  These factors are "probably listed in descending order of both importance and certainty." *Vieth v. Jubelirer*, 541 U.S. 267, 277 (2004).  The first two factors carry the most weight. *See Ctr. for Biological Diversity v. Mattis*, 868 F.3d 803, 822 (9th Cir. 2017).

In determining whether a political question exists, courts will consider the whole case, looking not only to Plaintiffs' claims, but also to the defendants' potential defenses, as well as the apportionment of liability or causation, to determine whether reviewing any of them will require review of military judgments or policies. *See, e.g.*, *Harris v. Kellogg Brown & Root Servs.*, 724 F.3d 458, 467-77 (3d Cir. 2013) (reviewing plaintiffs' claims and defenses, including proximate cause and contributory negligence); *Lane v. Halliburton*, 529 F.3d 548, 564-65 (5th Cir. 2008) (reviewing plaintiffs' claims and elements thereof); *Id.* at 565-68 (reviewing causation); *Loquasto*

*v. Fluor Corp.*, 512 F. Supp. 3d 728, 737-38 (N.D. Tex. 2021) (reviewing defendants' affirmative defenses). The classic political question is observed when the question at issue "necessarily implicates the wisdom of the military's strategic and tactical decisions." *Whitaker v. Kellogg Brown & Root, Inc.*, 444 F. Supp. 2d 1277, 1282 (M.D. Ga. 2006).

The allegations in Plaintiffs' Complaint, and Raytheon's anticipated defenses, are inextricably intertwined with matters that are textually committed to the Legislative and Executive Branches. To rule on the ultimate issues in this case, the Court must question matters of policy and decision making by these Branches. This case also requires resolution of matters for which there are no judicially ascertainable standards. Thus, because litigation of Plaintiffs' claims demands inquiry and adjudication into nonjusticiable political questions, dismissal is warranted. *See Diekan v. Stone*, No. 92-2462, 1993 U.S. App. LEXIS 13527, at *1-3 (1st Cir. June 10, 1993) (per curiam), *aff'd*, 995 F.2d 1061 (1st Cir. 1993) (upholding district court's 12(b)(6) dismissal of complaint that required an assessment of the strength of the claims "in light of the policy reasons behind nonreview of military matters" (quoting *Penagaricano v. Llenza*, 747 F.2d 55, 60 (1st Cir. 1984))); *Eveland v. Dir. of Cent. Intel. Agency*, 843 F.2d 46, 49 (1st Cir. 1988) (upholding district court dismissal of complaint for failure to state a claim where case raises nonjusticiable political question); *Rosario v. Fin. Oversight & Mgmt. Bd. for P.R.*, No. 20-1307, 2020 U.S. Dist. LEXIS 244072, at *1-2 (D.P.R. Dec. 23, 2020) (holding that a claim presenting a political question may be dismissed for failure to state a claim).

### A. The Complaint Demands Adjudication of Matters Constitutionally Committed to the Legislative and Executive Branches of Government.

The Constitution grants Congress the power to declare war, and provide for, organize, arm, maintain, and govern the military. U.S. Const. art. I, § 8, cls. 11-16. The Constitution also designates the President as the Commander in Chief of the Armed Forces. U.S. Const. art. II, § 2,

cl. 1.   Relying on these Constitutional provisions, courts have found that decisions regarding foreign policy and national security are textually committed to the political branches of the government. *See Grell v. Trump*, 330 F. Supp. 3d 311, 317 (D.D.C. 2018) (explaining that there is "no doubt that decision-making in the fields of foreign policy and national security is textually committed to the political branches of government" (quoting *Schneider v. Kissinger*, 412 F.3d 190, 194 (D.C. Cir. 2005))).   Additionally, there is "little doubt" that military judgments are constitutionally committed to these branches. *Carmichael v. Kellogg, Brown & Root Servs.*, 572 F.3d 1271, 1281 (11th Cir. 2009); *see also Whitaker*, 444 F. Supp. 2d at 1281 (explaining that a political question is implicated when military decisions are at issue where the military partners with a contractor that is subject to the government's orders, regulations, and plans).   Further, the Constitution "reserves to the legislative and executive branches responsibility for developing military training procedures that will ensure the combat effectiveness of [the United States'] fighting forces." *Aktepe v. United States*, 105 F.3d 1400, 1403 (11th Cir. 1997); *see also Whitaker*, 444 F. Supp. at 1280-82 (relying on *Aktepe*'s reasoning to find a political question where the claims were brought against a contractor).   In these circumstances, the first *Baker* factor—i.e., "a textually demonstrable constitutional commitment of the issue to a coordinate political department"—is established. *Baker*, 369 U.S. at 217.

A good example of this is found in *Gilligan v. Morgan*, where the Supreme Court declined to review plaintiffs' request for injunctive relief regarding the Ohio National Guard's training, weaponry, and orders, observing that "[t]he complex, subtle, and professional decisions as to the composition, training, equipping, and control of a military force are essentially professional military judgments, subject *always* to civilian control of the Legislative and Executive Branches." 413 U.S. 1, 10 (1973).   The *Gilligan* case involved neither foreign military operations nor active

wartime decisions, but the Court nonetheless observed and respected the Constitutional commitment of military training and weaponry to the other branches of government. *Id.* at 10-12. The decision to enhance the Aegis missile system and to test it—as alleged in Plaintiffs' Complaint—is equally subject to the professional decision-making of our military.

Decisions regarding military training, and by logical extension the testing of military weapons, implicate a political question because these procedures are aimed at ensuring the "combat effectiveness of our fighting forces." *Aktepe*, 105 F.3d at 1403 (finding analysis of NATO training exercises beyond judicial review); *see also Carmichael*, 572 F.3d at 1293 (finding that a "negligent training claim would entail judicial scrutiny of sensitive judgments customarily entrusted to the military"). These decisions result from a "complex, subtle balancing of many technical and military considerations, including the trade-off between safety and greater combat effectiveness." *Aktepe*, 105 F.3d at 1404. Thus, the government's testing of the Aegis system— including how, when, and where—are not subject to judicial inquiry.

In *Aktepe v. United States*, the Eleventh Circuit found that it could not determine whether the Navy was negligent in conducting a NATO military training simulated attack exercise with Turkey when two live missiles were fired after a miscommunication, killing and injuring individuals from the Turkish forces participating in the exercise. *Id.* at 1402-03. The court explained that the determination of negligence would necessarily require the court to question the necessity of simulating actual battle conditions. *Id.* at 1403. These matters are political questions, beyond the purview of the judiciary. *See id.*

Likewise, adjudication of Plaintiffs' claims here would require the Court to question whether it was necessary (if it even happened) for the military to test the Aegis missile system when it did, how it did, and where it did. Resolution of these issues directly implicates questions

about what is necessary to prepare our nation to defend itself against foreign threats.  These are precisely the type of matters the Constitution has delegated to the Legislative and Executive branches.

Similarly, the DOD and Congress' decision to enhance the Aegis missile system, how to achieve this goal, and when to implement the system in testing or in the field, is unreviewable.  In *Concerned About Trident v. Schlesinger*, the D.C. District Court determined that the decision to begin development on a missile program and where to place its base is an unreviewable political question. 400 F. Supp. 454, 482-83 (D.D.C. 1975).  The court explained that "substantive decisions relating to the national defense and national security lie within the narrow band of matters wholly [committed] to official discretion both because of the delicate security issues they raise and the constitutional delegation of those concerns to the political departments of our government." *Id.*  In a different case, the D.C. Circuit determined that the decision of where to place a military base is a political question not subject to judicial review. *See Bancoult v. McNamara*, 445 F.3d 427, 436 (D.C. Cir. 2006).  The issues Plaintiffs raise about the Aegis missile system compel the same disposition.

Plaintiffs allege that United States Secretary of Defense Perry made certain decisions regarding the Aegis system due to the "here and now" threat from rogue nations. (Compl. at ¶ 57).  Any decisions that the Department of Defense made to advance the security of our nation, keeping it safe from a perceived threat of foreign enemies, is a military decision concerning our nation's security that is exempt from judicial review. *See In re Korean Air Lines Disaster*, 597 F. Supp. 613, 616 (D.D.C. 1984) ("[P]laintiffs may not present these claims against the government based upon the decisions of the military concerning the national security.").

Further, Plaintiffs' challenge to the manufacture and warnings relating to the Aegis missile

system necessarily requires inquiry into government and military decisions.   Considering the claims and anticipated defenses, this action will require examination into the military design specifications for each component of the system, how the systems and features were intended to work together, whether they functioned as intended or some other feature of the system acted to inhibit intended function, whether the military specifications were followed and manufactured in accordance with the specifications, whether any decision making or instruction from the military during the design or testing process caused the alleged event, and whether some act by the military was the proximate cause of the event (assuming for this discussion the theory is credible, although it is not).   Determination of these issues necessarily requires evaluation of other variables and causes that involve military strategy. *See Bentzlin v. Hughes Aircraft Co.*, 833 F. Supp. 1486, 1497 (C.D. Cal. 1993) (explaining that the case requires inquiry into other possible causes of a friendly fire incident during wartime, and no fact finder could reach the manufacturing defect issue without eliminating other variables that would involve military strategy and orders to troops).

*Amedi v. BAE Systems* is instructive. 782 F. Supp. 2d 1357 (N.D. Ga. 2011).   There, the court held that claims against a government contractor for alleged defects in its Mine Resistant Ambush Protected ("MRAP") vehicle implicated political questions that could not be evaluated by the court. *Id.* at 1358.   Plaintiff alleged that BAE Systems negligently designed its MRAP vehicle and because of that negligence the vehicle failed to protect her husband from the blast of an explosive device while traveling with a convoy in Iraq. *See id.* at 1351-52.   Plaintiff argued that there were no military decisions involved because it was BAE's negligence that caused her husband's death. *See id.* at 1356.   The court flatly rejected plaintiff's contention and concluded that the defendant would "inevitably raise the issues of the formation of the convoy, the number of vehicles selected, the route used, whether there were sufficient safeguards taken to avoid

24

improvised explosive devices, and so forth, as a means of defending against liability and rebutting Plaintiff's assertion that issues of manufacturing were the sole cause" of decedent's death. *Id.* at 1357.

The *Amedi* court also noted that the "military decisions that could potentially have contributed" to decedent's death went well beyond the date of the incident. *Id.* The military decided the type of vehicle, that it was a priority to have it designed, and made the decision to fast-track the production of the vehicle. *Id.* The court noted the government initiated the MRAP program in response to an urgent need to offer greater protection to military personnel and the Secretary of Defense declared this program to be of highest priority within the DOD. *Id.* at 1352. The court acknowledged that the government contractor defense could address some of the issues raised in the case, but that it also would require the court to reexamine military decisions in "every aspect," including beyond the incident itself. *Id.* at 1357.

This Court is faced with the same issue; specifically, to resolve Plaintiffs' manufacturing defect, failure to warn, and negligence claims, the Court will be compelled to assess the actions of the military during the alleged testing, including:  whether and where targets or missiles should have been launched, how they should have been launched, and the timing and all other potential actions by the military that could have caused the alleged events.  This Court would further have to address the DOD, Congress, and the military's decisions in response to national security threats, including the further development of the Aegis missile system as one of those responses.  Inquiries into military decisions would be pervasive.

It is impossible for the Court to evaluate the merits of Plaintiffs' Complaint without extensive examination of matters constitutionally committed to the Legislative and Executive branches of government.  As a result, dismissal is warranted.

25

**B.     There is No Judicially Discoverable, Manageable Standard for Resolving the Issues Implicated by This Lawsuit.**

Litigating this case to conclusion would require the Court to adjudicate questions for which there are no "judicially discoverable and manageable standards." *Baker*, 369 U.S. at 217.  Other courts have concluded that they were unable to apply judicially manageable standards when the issues in a case implicate combat and training activities. *See McMahon v. Presidential Airways, Inc.*, 502 F.3d 1331, 1363 (11th Cir. 2007).  This is the logical conclusion here too because in order to determine whether the missile testing was performed negligently, this Court would have to determine how and where a reasonable military force would have conducted the testing.  As the Supreme Court noted in a related context, "it is difficult to conceive of an area of governmental activity in which the courts have less competence." *Gilligan,* 413 U.S. at 10.

It is difficult, if not impossible, for a court to discern the relevant standards of care for cases involving military action, which often differ from those in standard tort cases. *See Carmichael*, 572 F.3d at 1288-89.  For example, in *Aktepe*, where the plaintiffs alleged negligence by the Navy in a missile firing drill, the Eleventh Circuit explained that it would have to determine how a *reasonable* military force would have conducted such drill, but it lacked knowledge of the facts or standards sufficient to determine whether reasonable care was indeed taken, or what such reasonable care might look like. *See Aktepe*, 105 F.3d at 1404.  Questions such as what a "reasonable intercept" is or what a "reasonable military training exercise" might entail, where it might occur, and the reasons it may occur in a particular location, necessarily invoke a judicially unmanageable standard. *See generally id.*

**C.     Policy Determinations Outside of the Court's Discretion are Implicated.**

"Matters intimately related to foreign policy and national security are rarely proper subjects

for judicial intervention." *Haig v. Agee*, 453 U.S. 280, 292 (1981).  The political branches of government are afforded a high degree of deference regarding military affairs because the Constitution delegates such authority to them. *See Aktepe*, 105 F.3d at 1403.  Decisions regarding the development of a missile program inherently call into question the decision making of the Congress and the Armed Forces. *See, e.g.*, *Bentzlin*, 833 F. Supp. at 1497 (friendly fire incident killed Marines); *Zuckerbraun v. Gen. Dynamics Corp.*, 755 F. Supp. 1134, 1135, 1141-42 (D. Conn. 1990) (manufacturing defects in missile systems); *Nejad v. United States*, 724 F. Supp. 753, 754-55 (C.D. Cal. 1989) (missile that shot down civilian airplane in Iran); *El-Shifa Pharm. Indus. Co. v. United States*, 607 F.3d 836, 843-44 (D.C. Cir. 2010) (President's decision to launch missile at foreign target).

By Plaintiffs' word, the Aegis missile system was enhanced, designed, and implemented to counter the "here and now" threats presented by rogue nations. (*See* Compl. at ¶ 57).  The reasons for developing a new radar system or enhancing a missile program in view of government perceived threats to the nation are not ripe for judicial intervention.  The military and Congress' decisions to fund the program, "fast track" the program, and if true, test the program in the alleged manner and location, are all matters of policy left to these other branches of government.  These issues raise nonjusticiable political questions, necessitating dismissal of the Complaint.

## CONCLUSION

On its face, the Complaint violates the three-year statute of limitations for wrongful death and Plaintiffs cannot evade dismissal of this untimely Complaint founded on unsubstantiated conspiracy theories.  The horrific crash of TWA Flight 800 occurred 26 years ago—fatal injuries were instant, as was inquiry into its cause.  Information about the accident was plentiful, it was obtainable, and Plaintiffs could have procured all of it during the statute of limitations.  Thus, the

discovery rule does not save their claim.  Nor does a specious allegation of a general "cover-up" enable application of the fraudulent concealment doctrine; the allegations supporting this conspiracy theory are conclusory and Plaintiffs failed to plead any fraudulent action by Raytheon. Furthermore, Plaintiffs litigated these claims already—within the statute of limitations, thus undermining their tolling arguments in their entirety.

Additionally, resolution of this case is inextricably intertwined with matters that are constitutionally committed to the other branches of government, would probe the decision making of the military and Congress in the defense of our nation, and involves claims for which there are no judicially appliable standards.  Indeed, the essence of this case is a judgment of the government and military's decision to design, implement, and test the Aegis missile system in response to perceived threats to our nation.  This is the very definition of a political question.

For the reasons set forth herein, Raytheon respectfully requests that Plaintiffs' Complaint be dismissed with prejudice, requesting costs, fees, and any other relief the Court may deem just and proper.

<div style="margin-left:40%">

Respectfully submitted,
RAYTHEON COMPANY,
By its attorneys,

*/s/Michael K. Lane*
Michael K. Lane (BBO #673501)
Jonathan I. Handler (BBO #561475)
DAY PITNEY LLP
One Federal Street, 29th Floor
Boston, MA 02110
T: (617) 345-4600
F: (617) 345-4745
mlane@daypitney.com
jihandler@daypitney.com

</div>

**<u>CERTIFICATE OF SERVICE</u>**

I, Michael K. Lane, hereby certify that on the 16th day of December, 2022, the foregoing document was filed through the Court's CM/ECF electronic filing system, which will serve all counsel of record.

<div align="right">

/s/Michael K. Lane
Michael K. Lane (BBO #673501)

</div>