# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **RONALD KRICK, Individually and on Behalf of the Estate of Oliver Krick; MARGARETA KRICK; CHRISTOPHER KRICK; DOUGLAS KEVORKIAN, Individually and on Behalf of the Estate of Ralph Kevorkian; LISA MICHELSON, Individually and on Behalf of the Estate of Yonatan Rojany; ERIC ROJANY; JODELLE GEARON, Individually and on Behalf of the Estate of Daniel Gaetke; TODD GAETKE; CRAIG GAETKE; WANDA KEMP, Individually and on Behalf of the Estates of O. Lamar Allen and Ashton Allen; CHRISTINE GROGAN; EILEEN ZAHARIOUDAKIS, Individually and Behalf of the Estate of Donald Gough; and MICHAEL DETERESA,**<br><br>      **Plaintiffs**<br>**v.**<br><br>**RAYTHEON COMPANY; LOCKHEED MARTIN CORPORATION; UNITED STATES; and DOES 1 through 20, inclusive,**<br><br>      **Defendants.** | **Judge: Hon. Angel Kelley**<br><br>**Case No. 1:22-cv-11032-AK**<br><br><br>**Date:  August 30, 2023**<br>**Time:  2:30 p.m.**<br>**Courtroom:  8**<br><br>**[Leave to File Granted on August 10, 2023]** |

## PLAINTIFFS' SUPPLEMENTAL BRIEF REGARDING VENUE

Pursuant to the Court's order requesting that the parties submit additional briefing on the issue of venue as it relates to Plaintiffs' Federal Tort Claims Act claim, and whether the instant matter is properly before the Court (Doc. 90), Plaintiffs respond as follows:

**I.      Venue is Proper in the District Because Plaintiffs Have Alleged that the Acts and Omissions Complained of Occurred in Massachusetts**

The venue statute that Defendant United States relies upon, 28 U.S.C. § 1402(b), provides that venue is proper in FTCA claims "only in the judicial district where the plaintiff resides *or wherein the act or omission complained of occurred.*" *Id*. (emphasis added). Although none of the Plaintiffs reside in Massachusetts, the Second Amended Complaint ("SAC") alleges that the tortious conduct at issue here occurred within this District.

Plaintiffs have sufficiently pleaded allegations giving rise to proper venue.  Under the prevailing interpretation of section 1402(b), this standard has been "liberally construed to allow venue [. . .] if the acts that transpired in the forum district were not insubstantial in relation to the totality of events giving rise to plaintiff's grievance." *Franz v. U.S.*, 591 F. Supp. 374, 378 (D.D.C. 1984) (*quoting Lamont v. Haig*, 590 F. 2d 1124, 1134 (D.D.C. 1978)).

Plaintiffs allege that the United States acted in concert and worked side-by-side with defendant Raytheon in conducting the missile testing that downed TWA 800. SAC at ¶ 5. Plaintiffs further allege a range of negligent actions in connection with Raytheon-produced weapons and components including the SM-2 missile, the Aegis system, certain radar systems, MK illuminators, the Identify Friend or Foe ("IFF") system, and the Joint

Tactical Information Distribution System ("JTIDS"). SAC at ¶¶ 112, 124. Raytheon maintains its principal place of business in Massachusetts (*id*. at ¶ 28), and it follows that each of these allegations relating to the United States' actions in concert with Raytheon are firmly rooted within Massachusetts.

In addition, Plaintiffs allege that the United States negligently tested these weapons systems in commercial airspace, in close proximity to human populations and commercial aircraft. SAC at ¶ 108-128. The alleged testing was undertaken in violation of Congressional, regulatory, and military mandates designed to prevent military operations from interfering with civilian aviation. *See*, *e.g.*, 49 U.S.C. § 40101, *et seq.* (the Federal Aviation Act); 14 C.F.R. 73.3 (FAA regulations concerning special use airspace); ECF No. 75-3 (FAA Order 7400.8); ECF No. 75-2 (OPNAVINST 3770.2). These policies require that pilots receive notice of military operations affecting commercial airspace through a national airspace system operated by air traffic control facilities. ECF No. 75-2 at 9, 17, 18; ECF No. 75-4 (FAA Aeronautical Information Manual) at 4, 5. The government's failure to disseminate any warning of the testing through the national airspace system may also be linked to the District of Massachusetts because TWA 800 was operating under the control of the Boston Air Route Traffic Control Center when it exploded. ECF No. 75-5 at 3; *see also Metro Aviation, Inc. v. U.S.*, 2010 WL 1881875 (D. Mont. 2010) (holding that in an FTCA claim based on negligent operation of air traffic control facilities, venue was proper where the facilities were located). These negligent activities are not "insubstantial in relation to the totality of the events giving rise to" this case. *Franz*, *supra*, 591 F. Supp. At 378.

## II.     Additional Evidence of Collaboration Between the MIT Lincoln Laboratory and the United States in Developing and Testing the Radar and Weapons Systems at Issue in this Case

Since the time of filing of Plaintiffs' Oppositions to Defendants' Motions to Dismiss, Plaintiffs' investigation has uncovered additional connections to Massachusetts that support this District as an appropriate venue, as it is where *the acts or omissions complained of occurred*.

The Massachusetts Institute of Technology ("MIT") Lincoln Laboratory and the United States (U.S. Department of Defense and U.S. Navy) collaborated on the weapons/radar systems at issue in this case.  The MIT Lincoln Laboratory is located in Lexington, Massachusetts.  See *Exhibit A* at pages A (cover), i, iv, ix (MIT Lincoln Lab publication, https://www.ll.mit.edu/sites/default/files/other /doc/2018-04/MIT_Lincoln_Laboratory_history_book.pdf).

The MIT Lincoln Lab publication states the following regarding the Lab's role:

> Just as the Army had its Patriot system, the Navy had an air defense weapon system, Aegis, consisting of the ship-based AN/SPY-1 radar and the Standard Missile 2 (SM-2).  In the early 1990s, the Navy initiated an effort with the Laboratory [MIT's Lincoln Laboratory] to examine the feasibility of developing a system to provide BMD [Ballistic Missile Defense] capability by incorporating upgrades into existing Aegis [Navy weapon systems].  To support this work, the Laboratory developed an analytical simulation tool, the Lincoln Laboratory Theater Engagement Assessment Model, which was used to understand the implications of technology insertion on Aegis capability.  Two significant results of this work were a sensor system road map for the evolution of Aegis BMD and the development of a debris model that could be used to assess the impact of a cluttered environment on system performance.

See *Exhibit A* at pages 144-146.

In addition, the website biography of MIT Lincoln Lab's Director, Dr. Eric D. Evans, provides further details regarding the direct collaboration between MIT, the U.S. Department of Defense, and the U.S. Navy in modifying and testing the radar and weapons systems that Plaintiffs allege were the cause of the downing of TWA 800.  The biography states the following:

> Dr. Eric D. Evans is the director of MIT Lincoln Laboratory, a multidisciplinary Federally Funded Research and Development Center (FFRDC) run by the Massachusetts Institute of Technology for the Department of Defense…Prior to 1999, Evans was the leader of the Laboratory's Air Defense Techniques Group, where he was responsible for Navy programs related to area air defense, ship self-defense, and overland cruise missile defense… Evans was also responsible for Laboratory efforts to improve the Aegis AN/SPY-1 radar and Standard Missile with new processors and advanced signal processing.

> See *Exhibit B* (MIT Lincoln Lab website, Eric D. Evans biography, at https://www.ll.mit.edu/ biographies/eric-d-evans)

### III.    Even if the Court Finds that Venue in this District is Improper, the Case Should Not Be Dismissed

Even if the Court finds that venue is not proper in this District, the case should not be dismissed because Plaintiffs acted in good faith in filing in this District.  All defendants have sufficient contacts with the forum and related FOIA litigation was pending in this District at the time of filing. SAC at ¶¶ 8-14; *Thomas Stalcup v. Department of Defense*, Case No. 1:13-cv-11967-LTS.  In addition, Plaintiffs have alleged and shown that significant activities giving rise to this litigation occurred in Massachusetts.

The United States raises no facts or argument showing that Plaintiffs lacked diligence or failed to act in good faith, and therefore it has not shown that dismissal is

warranted.[1]  Finally, dismissal is too severe a remedy at this stage because, if the Court finds that Plaintiffs have not sufficiently pleaded proper venue, less drastic relief would protect the rights of all parties while prejudicing none. For example, the Court could grant Plaintiffs leave to amend so that they could cure any identified defects. If discovery subsequently revealed that an alternative venue would better serve the needs of the case, the case could be transferred there pursuant to 28 U.S.C. § 1404. Outright dismissal is not the proper outcome if the Court determines that another venue would better suit this litigation.

Respectfully submitted,

Dated: August 21, 2023          BAILEY & GLASSER LLP

By: */s/ John Roddy*_____
John Roddy (BBO. No. 424240)
*jroddy@baileyglasser.com*
**Bailey Glasser LLP**
176 Federal Street, 5th Floor
Boston, MA 02110
Telephone: (617) 439-6730
Facsimile: (617) 951-3954

Todd A. Walburg (*Admitted Pro Hac Vice*)
*twalburg@baileyglasser.com*
Leslie A. Brueckner (*Pro Hac Vice Pending*)
*lbrueckner@baileyglasser.com*
Scott B. Baez (*Admitted Pro Hac Vice*)
*sbaez@baileyglasser.com*
**Bailey Glasser LLP**
1999 Harrison Street, Suite 660

---

[1] The United States argues that the Court should dismiss the case on venue grounds because "the statute of limitations has long expired [and thus] transfer to a new venue would be futile." ECF No. 72-1 at 31. This argument is logically unsound because transfer would only be futile if the Court accepts the governments statute of limitations arguments, in which circumstance the issue of venue would be moot.

Oakland, CA 94612
Telephone: (510) 272-8000
Facsimile: (510) 463-0291

Benjamin L. Bailey (*Admitted Pro Hac Vice*)
*bbailey@baileyglasser.com*
Eric B. Snyder (*Admitted Pro Hac Vice*)
*esnyder@baileyglasser.com*
Christopher D. Smith (*Admitted Pro Hac Vice*)
*csmith@baileyglasser.com*
**Bailey Glasser LLP**
209 Capitol Street
Charleston, West Virginia 25301
Telephone: (304) 345-6555
Facsimile: (304) 342-1110

***Attorneys for the Plaintiffs***

**<u>Certificate of Service</u>**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic File (NEF) on August 21, 2023.

*/s/ John Roddy*
John Roddy
